## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MARK E. SELLS,** | **)** |
| | **)** |
| **Plaintiff,** | **)** |
| | **)** |
| **v.** | **)**  **Case No. CIV-25-731-HE** |
| | **)** |
| **LETISHA PANTOJA et al.,** | **)** |
| | **)** |
| **Defendants.** | **)** |

### REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, has filed an amended complaint under 42 U.S.C. § 1983 seeking relief for alleged violations of "Federal law" and his Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution. Doc. 13, at 11; *see generally* Doc. 13.[1] United States District Judge Joe Heaton referred the matter to the undersigned under 28 U.S.C. § 636(b)(1)(B) and (C). Doc. 4.[2] Upon review, the undersigned recommends the Court dismiss the amended complaint in its entirety.

---

[1] The amended complaint, Doc. 13, supersedes the original complaint, Doc. 1, and now serves as the operative complaint in this matter. *See May v. Segovia,* 929 F.3d 1223, 1229 (10th Cir. 2019) ("The amended complaint, as the operative complaint, supersedes the original complaint's *allegations* . . . .").

[2] Citations to a court document are to its electronic case filing designation and pagination. Apart from alterations to capitalization, quotations are verbatim unless indicated.

## I.    Screening.

Federal law requires the Court to screen complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss the complaint, or any portion of the complaint, if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010).

This Court construes "[a] pro se litigant's pleadings . . . liberally," holding them "to a less stringent standard than formal pleadings drafted by lawyers."

2

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The Court, however, may not serve as Plaintiff's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## II.    Procedural History.

### A.    Defendants.

Plaintiff, a state prisoner[3] housed at the Red Rock Correctional Center,[4] names as Defendants: (1) Letisha Pantoja, Correctional Officer, in her official and individual capacities; (2) Mr. Houston, Unit Manager Hse. 3/4, in his official and individual capacities; (3) Mr. Looney, Case Manager Hse. 4, in his official and individual capacities; (4) Ms. Meloni, Unit Manager Hse. 8, in her official and individual capacities; (5) Ms. Watters, Case Manager Hse 8, in her official and individual capacities; (6) Mr. Perez, Case Manager Hse. 8, in his official and individual capacities; (7) J. Farris, Warden Lawton Correctional

---

[3]    Plaintiff states in his petition that he is both a state and federal prisoner. Doc. 13, at 4. Publicly available records show, however, that he is currently serving a state sentence imposed by the District Court of Washington County, Oklahoma. *See* https://okoffender.doc.ok.gov/ (DOC # 546774) (last visited Mar. 31, 2026).

[4]    On July 25, 2025, "[t]he Oklahoma Department of Corrections officially became the owner of the Lawton Correctional and Rehabilitation Facility." *See* https://oklahoma.gov/doc/newsroom/2025/oklahoma-department-of-corrections-finalizes-purchase-of-lawton-.html (last visited Mar. 31, 2026). The facility is "now known as Red Rock Correctional Center." *Id*.

3

and Rehabilitation Facility (LCRF), in his official and individual capacities; (8) GEO Group, Inc. Owner LCRF, in its individual capacity; (9) David Rogers, Warden, Red Rock Correctional Center, Oklahoma Department of Corrections (ODOC), in his official and individual capacities; and (10) Steven Harpe, Director of ODOC, in his official and individual capacities. Doc. 13, at 6-9.

### B.    Plaintiff's claims.

Liberally construing Plaintiff's complaint, he raises five claims, which mostly stem from his interactions with Correctional Officer Pantoja. First, Plaintiff alleges Defendant Pantoja repeatedly threatened, harassed, persecuted, and retaliated against him for helping other inmates in preparing their legal filings. *Id*. at 11-17. After an inmate he assisted was transferred out of the prison, Plaintiff asserts that Defendant Pantoja "vindictively" "retaliate[d] and persecute[d]" him (Claim One). *Id*. at 18.

In Claim Two, Plaintiff maintains that on May 28, 2025, Defendant Pantoja "falsely claimed" Plaintiff possessed that transferred inmate's legal filings and "decide[d] to give Plaintiff a disciplinary 'write up' for being in possession of [the inmate's] legal work." *Id*. at 17-18. On June 5, 2025, a Disciplinary Hearing Officer found Plaintiff "'Guilty' of the Class 'A' write up." *Id*. at 19. Plaintiff claims the hearing officer gave him a sixty-day visitation restriction for the "minor infraction." *Id*. Plaintiff further claims that on June

4

6, 2025, Defendant Pantoja called the "Prison Programs Department" head and demanded they terminate Plaintiff from his position as a GED tutor. *Id.* The department head immediately terminated him. *Id.*

In Claim Three, Plaintiff alleges that Defendant Pantoja also called his Case Manager, Defendant Looney, to have Plaintiff transferred from his more lenient "Honor Pod" to "housing unit 8-A, one of the most violent housing unit[s] in the prison." *Id.* at 20. Plaintiff's Unit Manager, Defendant Houston, and Defendant Looney then confirmed they were moving Plaintiff to housing unit 8-A. *Id.*

In Claim Four, Plaintiff outlines two other June library interactions with Defendant Pantoja where she allegedly threatened him with a write-up for assisting other inmates. *Id.* at 21-22. On June 18, 2025, Plaintiff's new case manager, Defendant Watters, informed Plaintiff they had scheduled a Unit Classification Committee meeting to review his behavioral level based on his interactions with Defendant Pantoja. *Id.* at 22. At the conclusion of the meeting on June 20, 2025, Defendants Unit Manager, Defendant Meloni, his Case Manager, Defendant Perez, and Defendant Watters dropped Plaintiff's classification to the lowest level, 1, from the highest level, 4. *Id.* at 23-24.

And in Claim Five, Plaintiff alleges that Defendants Pantoja, Houston, and Looney conspired to send Plaintiff to unit 8-A, and that, as a result of living

there, he has suffered. *Id.* at 24. He states that Defendants Meloni, Watters, and Perez are aware of the unit's dangers (broken cell door locks and lack of access to toilet paper for several days) and of the Eighth Amendment violations he has endured. *Id.* at 24-26. He claims Defendant Meloni personally denied him toilet paper on July 7, 2025. *Id.* at 25. He also claims he received a five-year restriction from the telephone and table-canteen kiosk without reason, showing continued persecution. *Id.* at 26. Finally, he alleges the undersigned ignored Plaintiff's Ex Parte suit, further endangering his life.[5] *Id.*

### C. The remedies Plaintiff seeks.

Plaintiff seeks the following temporary relief:

A remand to federal custody or to alternative housing until adjudication of this suit; an order prohibiting his transfer to another ODOC facility to avoid preventing or delaying the adjudication of this suit; an order prohibiting the former LCRF employees named as Defendants from working inside the prison until the completion of this suit; an order prohibiting RRCC staff from harassing him, persecuting him, or retaliating against him during this suit; and an order allowing Plaintiff library access three days a week for twelve hours a week to work on this suit. *Id.* at 27.

---

[5] The undersigned denied Plaintiff's request for an emergency injunction and ordered Plaintiff to complete a complaint on the proper form. Doc. 5.

Plaintiff seeks the following permanent relief:

An order that RRCC staff not retaliate against Plaintiff for bringing this lawsuit; an order for the prison to house Plaintiff in a safe housing unit for his age; an order to reinstate his "Level-4" status along with an award of "back gang pay"; an order for the prison to rehire Plaintiff at a job of Plaintiff's choice; an order for the prison to pay him a comparable wage for the geographic area; an order prohibiting any Defendants found responsible for violating his civil rights from working in any Oklahoma prison for ten years; and an order that the prison house Plaintiff where he can receive adequate health care given his age and Veteran Affairs (VA) disability rating. *Id.* at 27-28.

And in damages Plaintiff seeks:

Compensatory damages of $200,000; monetary damages of $100,000,000 for his pain and suffering; and punitive damages of $1,000,000,000. *Id.* at 28.

## III.   Analysis.

### A.   **Plaintiff may not recover monetary damages under 42 U.S.C. § 1983 from the individuals he sues in their official capacities.**

Except for Defendants Farris, Rogers, and Harpe, Plaintiff alleges each individual Defendant was employed by GEO Group when the prison was

privately owned and known as LCRF.[6] Doc. 13, at 6-8. He asserts they are now employed by the ODOC at RRCC. *Id*. He seeks damages against these Defendants, as well as Defendants Farris, Rogers,[7] and Harpe, in both their individual and official capacities. The Court should dismiss Plaintiff's official-capacity claims against these Defendants.

Private prison defendants are not state actors, and they do not have official capacities. *See Jones v. Barry*, 33 F. App'x 967, 971 n.5 (10th Cir. 2002) ("[T]he [private prison] defendants are not state actors, and they do not have an 'official capacity' . . . ."). So Plaintiff cannot proceed with his claims against the LCRF Defendants in their official capacities. *See, e.g.*, *Alamiin v. Patton*, No. CIV-13-1001-F, 2016 WL 7217857, at *6 n.6 (W.D. Okla. Dec. 13, 2016) ("As employees of a private prison, they are not state officials, and official capacity claims cannot be asserted against them."). The Court should dismiss these claims with prejudice.

Additionally, because Plaintiff alleges the individual Defendants, except for Defendant Farris, are state employees, Plaintiff cannot raise claims for

---

[6]    *See Jaquez v. Lawton Corr. Facility*, No. CIV-11-1066-F, 2013 WL 5972413, at *1 (W.D. Okla. Nov. 8, 2013) ("Lawton Correctional Facility is a private prison owned and operated by Geo Group, Inc.").

[7]    Plaintiff states Defendant Farris was the warden of the LCRF. Doc. 1, at 8. He states Defendant Rogers is now the warden of RRCC. *Id*. at 9.

damages against them. These state "officials acting in their official capacities are [not] 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 70-71 (1989) (explaining that "[s]tates or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" subject to suit under § 1983 (quoting *Mt. Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977))); *see also Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1135 (10th Cir. 2024) ("It has long been settled that '[n]either states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983' for monetary damages." (quoting *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994))). And the Eleventh Amendment provides them with immunity from suit.

"When a suit alleges a claim against a state official in his [or her] official capacity, the real party in interest in the case is the state . . . ." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (internal quotation marks omitted). But "[s]tates enjoy sovereign immunity from suit under the Eleventh Amendment." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid

exercise of power, unequivocally expresses its intent to abrogate the immunity.").

The RRCC is now a state prison that the ODOC runs. The ODOC "is an arm of the [S]tate" of Oklahoma. *Eastwood v. Dep't of Corr.*, 846 F.2d 627, 632 (10th Cir. 1988). Just as the Eleventh Amendment protects states from suit, an ODOC employee sued in his or her official capacity also enjoys the Eleventh Amendment's protection of immunity. *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) ("Damage claims against state officers in their official capacities trigger Eleventh Amendment immunity."); *see also Eastwood*, 846 F.2d at 631-32 ("We conclude that the DOC is an arm of the state and should be entitled to absolute immunity."); *Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections[,] . . . the Eleventh Amendment applies to the official-capacity claims for damages.").

Exceptions to immunity exist where a state consents to suit in federal court or where Congress has abrogated a state's sovereign immunity. *Muscogee (Creek) Nation*, 669 F.3d at 1166. But Oklahoma has not consented to be sued in federal court, nor did Congress abrogate state sovereign immunity by creating a private right of action under § 1983. *Berry v. Oklahoma*, 495 F. App'x

920, 921-22 (10th Cir. 2012) (citing Okla. Stat. tit. 51, § 152.1(B) & *Will*, 491 at 66).

Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66. The Court should thus dismiss Plaintiff's claims for damages against the individual Defendants in their official capacities. *See* 28 U.S.C. § 1915A(b)(2) (authorizing the court to dismiss a claim that "seeks monetary relief from a defendant who is immune from such relief"); *Colby*, 849 F.3d at 1278.[8]

## B.    Plaintiff fails to state a claim against Defendant GEO Group.

Plaintiff sues Defendant GEO Group in its individual capacity. Doc. 13, at 8. "But as a private entity, GEO Group lacks a traditional individual or official capacity." *Mitchell v. GEO Grp., Inc.*, No. CIV-19-40-G, 2019 WL 4923986, at *2 (W.D. Okla. Apr. 10, 2019), *adopted as modified*, 2019 WL 4918775 (W.D. Okla. Oct. 4, 2019). This lack of traditional labeling, however,

---

[8]    An exception to sovereign immunity applies if a plaintiff alleges an ongoing violation of federal law and seeks prospective relief. *See, e.g.*, *Muscogee (Creek) Nation*, 669 F.3d at 1166 (noting the *Ex Parte Young*, 209 U.S. 123 (1980), exception to sovereign immunity and stating, "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief."). The undersigned addresses Plaintiff's requests for injunctive relief below.

does not prevent a plaintiff from suing a private entity under a municipal liability theory.

Section 1983 "creates a private right of action against any person who, under color of state law, deprives another individual of 'any rights, privileges or immunities secured by the Constitution and laws.'" *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1121-22 (10th Cir. 2009) (quoting 42 U.S.C. § 1983). A private entity acting under color of state law may be held liable for constitutional violations under Section 1983. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). As a private corporation that previously operated the LCRF, Defendant GEO Group is subject to Section 1983 liability under the *Monell* doctrine of municipal liability. *Id.* ("Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants.") (footnote omitted); *see Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978); *Goins v. GEO Lawton Corr. Facility*, No. CIV-22-1014-JD, 2023 WL 7443151, at *3 (W.D. Okla. Mar. 8, 2023) ("Geo Group, Inc.[ ] is a suable entity performing a function akin to a municipal or county government.").

Under this theory, Defendant GEO Group cannot be held vicariously liable for its employees' alleged constitutional violations under § 1983. *See*

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Instead, to establish Defendant GEO Group's liability under § 1983, Plaintiff must establish three basic elements: (1) Defendant GEO Group had an official policy or custom; (2) that caused a violation of Plaintiff's federal rights; and (3) that "was enacted or maintained with deliberate indifference to an almost inevitable" federal rights violation. *Id.* at 769-71.[9]

Plaintiff does not allege any facts supporting an inference of a policy or custom or that such a policy or custom caused Defendant GEO Group's officers or employees to treat him unlawfully or caused the dangerous conditions in

---

[9]     A municipal policy or custom may take one of five forms:

> (1) a formal regulation or policy statement;
> (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;
> (3) the decisions of employees with final policymaking authority;
> (4) the ratification by such final policymakers of the decisions— and the basis for them— of subordinates to whom authority was delegated subject to these policymakers' review and approval; or
> (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

unit 8-A. Conclusory or speculative allegations cannot support a plausible claim for relief. *See, e.g., Iqbal*, 556 U.S. at 678 (instructing that "threadbare recitals of a cause of action, supported by mere conclusory statements" fail to state a plausible claim for relief).

At best, Plaintiff alleges certain individual officers retaliated against him for helping other inmates with their legal work, moved him to a dangerous unit, and temporarily deprived him of toilet paper. Yet he does not claim the actions of these individuals were under a GEO Group policy or custom. Because Plaintiff cannot sue GEO Group "for an injury inflicted solely by its employees or agents," *see Monell*, 436 U.S. at 694, the Court should dismiss Plaintiff's municipal liability claims against Defendant GEO Group for failure to state a claim.

### C.    Plaintiff fails to state a claim against Defendants Farris and Rogers in their individual capacities.

Plaintiff also sues Defendants Farris and Rogers in their individual capacities. But Plaintiff does not allege that either Defendant personally participated in denying his constitutional rights. Allegations of "personal participation in the specific constitutional violation complained of [are] essential" in a § 1983 action. *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in

14

the alleged constitutional violation."). To survive screening, Plaintiff must allege specific facts that make clear "who did what to whom." *Clay v. Lares*, 2024 WL 79966, at *1 (10th Cir. Jan. 8, 2024) (affirming dismissal of complaint on screening when the plaintiff failed to "make clear each defendant's personal participation in any alleged constitutional violation by alleging who did what to whom").

"As a general matter, § 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). A court may only hold a supervisor "liable for the actions of other officers if an 'affirmative link' exists between the supervisor's personal participation, his exercise of control or direction, or his failure to supervise, and the constitutional deprivation." *Arnold v. City of Olathe*, 35 F.4th 778, 793 (10th Cir. 2022) (quoting *Fogarty*, 523 F.3d at 1162). A party may establish this "affirmative link between the supervisor and the violation" by showing: "(1) personal involvement; (2) sufficient causal connection, and (3) culpable state of mind." *Est. of George v. City of Rifle*, 85 F.4th 1300, 1321 (10th Cir. 2023) (quoting *Valdez v. Macdonald*, 66 F.4th 796, 834 (10th Cir. 2023)).

Plaintiff does not allege that either Defendant Farris or Defendant Rogers had any involvement in threatening him or retaliating against him. He makes no mention of either with respect to the alleged deprivation of hygienic materials or that either was aware of this deprivation. Even if Defendants Farris and Rogers served as Warden and acted as supervisors over Defendants Meloni, Houston, Pantoja, Watters, and Perez—an allegation Plaintiff does not make—mere awareness of unconstitutional actions does not amount to personal participation in those actions. *See Schneider*, 717 F.3d at 767 (explaining that personal participation requires "more than 'a supervisor's mere knowledge of [their] subordinate's conduct." (quoting *Iqbal*, 556 U.S. at 677)). And the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The Court should therefore dismiss Plaintiff's claims against Defendants Farris and Rogers without prejudice based on a lack of personal participation.

**D.    Plaintiff fails to state a claim against Defendant Harpe in his individual capacity.**

Plaintiff includes no factual allegations that implicate Defendant Harpe in the events underlying his claims. Without alleging personal participation, a § 1983 action for personal or supervisory liability cannot stand. *Henry*, 658 F.3d at 1241. Whether Plaintiff intended to allege personal or supervisory

16

liability, he has failed to allege facts that, if true, state an individual capacity claim. Thus, the Court should dismiss Plaintiff's claims against Defendant Harpe in his individual capacity without prejudice for failure to state a claim.

### E. Plaintiff has failed to sufficiently allege a claim for prospective injunctive relief against Defendants in their official capacities.

As noted above, Plaintiff sues Defendants Pantoja, Houston, Looney, Meloni, Watters, Perez, Rogers, and Harpe in their official capacities and seeks prospective injunctive relief in the form of orders directing RRCC to perform a litany of actions, some of which are within its power. Courts recognize an exception to sovereign immunity for injunctive relief when a plaintiff (1) alleges "'an ongoing violation of federal law,'" and (2) "'seeks relief properly characterized as prospective.'" *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). So by naming Warden Rogers and ODOC Director Harpe in their official capacities, he has named the proper parties from whom to obtain certain requested prospective injunctive relief. *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that suing a defendant in his official capacity is

17

only another way to plead an action against the defendant's associated entity). But Plaintiff's allegations are not sufficient to support his requests for injunctive relief against these Defendants, so the Court should dismiss them.

Plaintiff asks the Court to "[r]emand [him] to [f]ederal custody" or to a safer housing unit, prevent his transfer to another ODOC prison, prohibit former LCRF employees named as Defendants from working "inside" RRCC, order "RRCC staff to not harass, persecute, or retaliate against" him for suing, and allow him law library access. Doc. 13, at 27. He also asks the Court to order RRCC officials to "rehire[]" him and pay him a "comp[a]rable wage," to move him to a safe housing unit with age-appropriate medical care, to reinstate his previous level, and prohibit any Defendants "found guilty" of violating his rights from working in "any Oklahoma prison for [ten] years. *Id.* at 27-28.

These types of orders are in the nature of mandamus relief, which the Court cannot grant. Federal district courts have jurisdiction to enter mandamus relief against federal officials and agencies, 28 U.S.C. § 1361, but they may not enter mandamus relief against state officials. *E.g.*, *Sockey v. Gray,* 159 F. App'x 821, 822 (10th Cir. 2005) ("Federal courts are without jurisdiction to grant a writ of mandamus against state and local officials."). So to the extent that Plaintiff requests mandamus relief from these state officials, the Court should dismiss them.

18

For his remaining requests for injunctive relief, Plaintiff relies solely on conclusory statements to support them. He states he is housed in a dangerous unit but does not relate any personal danger. He states certain officers deprived him of toilet paper for several days but admits that is no longer the case. He states he was issued a restriction from telephone and tablet use for an unknown reason, and that he is afraid of continued harassment and persecution for helping other inmates with their legal work, Doc. 13, at 23-26, but a "plaintiff cannot sustain a claim for prospective injunctive relief that is based on 'speculative future harm.'" *Shaw v. Smith*, 166 F.4th 61, 75 (10th Cir. 2026) (quoting *Collins v. Daniels,* 916 F.3d 1302, 1314 (10th Cir. 2019)). And the Court cannot impose an injunction "to remedy past harm." *DTC Energy Grp., Inc., v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018).

Plaintiff alleges past harm and speculates about future harm. Those assertions are insufficient to warrant injunctive relief. *See id.* at 1270 (noting that the burden for a preliminary injunction is "not an easy burden to fulfill" and stating that a movant "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages" (internal quotation marks omitted)). The Court should therefore dismiss Plaintiff's requests for injunctive relief against Defendants Rogers and Harpe in their official capacities without prejudice.

Any claims against Defendants Pantoja, Houston, Looney Meloni, Watters, and Perez are redundant of Plaintiff's official capacity claims against Defendants Rogers and Harpe and are therefore also subject to dismissal. The Court should dismiss the official capacity claims against all remaining Defendants.

### F.   Plaintiff fails to state a claim of retaliation.

Plaintiff alleges Defendant Pantoja retaliated against him for helping other inmates with their legal work. Doc. 13, at 11, 14-16, 21-22. And when she discovered Plaintiff had possession of another inmate's legal papers she "decide[d] to give [him] a disciplinary write-up." *Id*. at 17-18. Plaintiff further alleges that, as part of her campaign of harassment to prevent Plaintiff from assisting other inmates with their legal work, Defendant Pantoja had him transferred to another unit and dropped his conduct level. *Id*. at 18-24.[10]

"'[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.'" *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). "This principle applies even where the action taken in

---

[10]   Plaintiff does not allege that Defendant Pantoja retaliated against him for pursuing his own litigation or that she prevented or impeded either his or any other inmate's access to the courts.

retaliation would be otherwise permissible." *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990). To prevail on a claim of retaliation, a prisoner must show that the challenged actions would not have occurred "'but for' [a] retaliatory motive." *Id.* at 949–50. And he must "'allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights.'" *Peterson*, 149 F.3d at 1144 (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990)).

Plaintiff alleges Defendant Pantoja retaliated against him for acting as a jailhouse lawyer on behalf of other prisoners. But "acting as a jailhouse lawyer is not a constitutionally protected activity." *Brooks v. Colo. Dep't of Corr.*, 762 F. App'x 551, 560 (10th Cir. 2019); *see Smith*, 899 F.2d at 950 ("Smith does not have a protected interest in providing legal representation to other inmates."); *Northington v. Zavaras*, 229 F.3d 1164, 2000 WL 1133128, at *2 (10th Cir. Aug. 10, 2000) (holding that "the actions Northington ties to his aid of other inmates cannot support a claim of retaliation for the exercise of his own constitutional rights."). Because Plaintiff's provision of legal assistance to other inmates does not constitute a constitutionally protected activity, it cannot serve as the basis for his retaliation claim. *See, e.g., Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (stating that to establish a First Amendment retaliation claim, a plaintiff must first show that "he was engaged in constitutionally protected activity"); *see also Ferguson v. N.M. Dep't*

21

*of Corr.*, 21 F. App'x 822, 823 (10th Cir. 2001) ("The district court correctly held that the First Amendment is not implicated by Mr. Ferguson's alleged 'jailhouse lawyering' activities."). So the Court should dismiss Plaintiff's retaliation claim for failure to state a claim. *See Brooks*, 762 F. App'x at 559-60 (upholding district court's dismissal of retaliation claim because the plaintiff had not alleged he had engaged in a "constitutionally protected activity" by "acting as a jailhouse lawyer on behalf of another inmate").

### G.   Plaintiff fails to sufficiently state a claim for relief based on his loss of a job (Claim 2), his transfer to housing unit 8-A (Claim 3), and his loss of classification level (Claim 4).

Plaintiff complains that his drop in classification level made him "'Unhirable'" within the prison. Doc. 13, at 22-24. And that Defendants terminated him from his job and transferred him without cause to a "dangerous" unit. *Id.* at 19-20, 24. Plaintiff does not state a cognizable claim for relief based on these complaints.[11]

The Due Process Clause protects liberty interests that are "generally limited to freedom from restraint which, while not exceeding the sentence in

---

[11]   Plaintiff states Defendants violated 18 U.S.C. §§ 1581 and 1590 by terminating his position and holding him "in 'Peonage.'" Doc. 13, at 19 n.16, 24. But Plaintiff does not have a private right of action to enforce these criminal laws. *See, e.g.*, *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (explaining that federal criminal statutes that "do not provide for a private right of action" are "not enforceable through a civil action"). So the Court should dismiss those claims.

such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). "Discipline [imposed] by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485.

Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification").

And "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the

23

conviction has authorized the State to impose")). Plaintiff has not adequately alleged that his assignment to housing unit 8-A imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223-24 (finding atypical and significant hardship in assignment to supermax facility where "almost all human contact [was] prohibited," conversation not permitted from cell to cell, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, "indefinite" placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Similarly, Plaintiff's allegations about his loss of his job and his demotion to classification level 1 from level 4 do not imply any protected liberty interests. These punishments neither impose an atypical or significant hardship nor does he claim they affected the duration of his sentence. *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (prisoners do "not have a constitutional right to employment absent a regulation entitling [them] to employment" and "a denial of employment opportunities to an inmate does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" (quoting *Sandin*, 515 U.S. at 484)); *Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) ("We conclude that the reduction to Marshall's inmate classification level did not implicate a protected liberty interest.").

Plaintiff's allegations do not state a claim for a violation of his due process rights. So the Court should dismiss them.

### H.    Plaintiff fails to state a conspiracy claim.

In Claim 5, Plaintiff alleges that Defendants Pantoja, Houston, Looney, Meloni, Watters, and Perez conspired to harass him and retaliate against him by transferring him to housing unit 8-A and keeping him there under unsafe and unsanitary conditions. Doc. 13 at 20, 24-26.[12]

"'[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'" *Thompson v. Platt*, 815 F. App'x 227, 239 (10th Cir. 2020) (quoting *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)). "An actionable conspiracy 'requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.'" *Id.* (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-

---

[12]    Plaintiff alleges these Defendants conspired against him in violation of 18 U.S.C. §§ 241 and 242. *See* Doc. 13, at 20-21, 24, 26. But these criminal statutes "do not provide for a private civil cause of action." *Henry v. Albuquerque Police Dep't.*, 49 F. App'x 272, 273 (10th Cir. 2002); *see also Andrews*, 483 F.3d at 1076 (affirming dismissal of claim alleging violation of § 241 because it is a criminal statute that does "not provide for a private right of action and [is] thus not enforceable through a civil action").

28 (10th Cir. 2010), *abrogated in part on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021)).

Plaintiff does not allege specific facts to show an agreement and concerted action among the named Defendants to harass him or retaliate against him. *See Brooks*, 614 F.3d at 1228 (to state a § 1983 conspiracy claim, "'a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants'" because "'[c]onclusory allegations of conspiracy are insufficient.'" (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998))). He references separate actions taken by various Defendants about moving him to 8-A and their lack of care in maintaining the housing unit, but states only in a conclusory fashion that these actions stemmed from a conspiracy. Doc. 13, at 24. At best, Plaintiff only sets forth the possibility of a conspiracy without specific factual allegations of an agreement to render such a claim plausible.

"It is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case." *Chavez v. Huerfano Cnty.*, 195 F. App'x 728, 730 (10th Cir. 2006). And, without more, Plaintiff cannot maintain his conspiracy claims against Defendants. *See, e.g.*, *Thompson*, 815 F. App'x at 240 (holding the plaintiff's "allegation of a conspiracy [was] conclusory" because "[i]t identifie[d] no agreement among [the defendants] to work together to achieve

26

an unlawful objective"); *see also Tonkovich*, 159 F.3d at 533 (holding the plaintiff's allegation "that some of the Law School faculty members met with certain administrators during the investigatory process and then signed the Letter soliciting complaints from students" was an insufficient basis to reasonably infer "an agreement and concerted action amongst the defendants"). So the Court should dismiss Plaintiff's conspiracy claims for failure to state a claim.

## I.    Plaintiff fails to state an Eighth Amendment deprivation claim based on his temporary lack of access to toilet paper.

Assuming Plaintiff is raising an Eighth Amendment deprivation claim based on his temporary lack of access to toilet paper, that claim also fails for failure to state a claim. He maintains that while on lockdown, every other cell received toilet paper, but he did not receive any for seven days. Doc. 13, at 25. He maintains that Defendant Meloni stated on the fourth day that it was too late to get any. *Id.* He admits though that he eventually received toilet paper. *Id.*

Plaintiff's temporary deprivation does not violate the Eighth Amendment. *See Vernon v. Slabosky*, No. CIV-11-815-HE, 2016 WL 4775739, at *20 (W.D. Okla. Sept. 14, 2016) (citing *Harris v. Fleming*, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (finding no Eighth Amendment violation when prison officials failed to provide a prisoner with toilet paper for five days, and soap, a

27

toothbrush, and toothpaste for ten days)); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (holding that the plaintiff's allegations of a deprivation of hygiene items for twenty-five hours and a lack of access to hygiene items for four weeks were insufficient "to conclude that a constitutional violation [was] plausible, rather than merely possible"). So the Court should also dismiss this part of Claim 5 for failure to state a claim.

### J.    The Court cannot grant all the relief Plaintiff seeks.

In part, Plaintiff seeks reinstatement to his "Level 4" security classification. Doc. 13, at 27. He alleges he was not provided with the required due process throughout the disciplinary proceeding. *Id.* at 22-24. That suggests a challenge to the execution of his sentence, which he may only bring in a 28 U.S.C. § 2241 habeas corpus proceeding. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (explaining "[p]etitions under § 2241 are used to attack the execution of a sentence," including the "deprivation of good-time credits and other prison disciplinary matters"). The Court cannot grant Plaintiff's requested relief.

## IV.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court dismiss the amended complaint in its entirety. Doc. 13. The undersigned

28

further recommends the Court deny Plaintiff's motion to appoint counsel. Doc. 16.

The undersigned advises Plaintiff of his right to file an objection to this Report and Recommendation with the Clerk of this Court by April 27, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The undersigned further advises Plaintiff that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 6th day of April, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

29